**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Dalia Spina, an individual, | No. CV-05-0712 PHX SMM |
| Plaintiff, | **MEMORANDUM OF DECISION AND ORDER** |
| v. |  |
| Maricopa County Department of Transportation, a Political Subdivision of Maricopa County, |  |
| Defendant. |  |

Before the Court is Defendant Maricopa County Department of Transportation's ("MCDOT") Motion for Partial Summary Judgment. (Doc. 137.) Dalia Spina ("Plaintiff") opposes the motion. (Doc. 144.)[1] MCDOT replies in support of the Motion. (Doc. 146.) Having reviewed the parties' contentions, the Court now issues this Memorandum of Decision and Order granting MCDOT's Motion.

///

///

///

---

[1] Plaintiff previously submitted a response to MCDOT's motion for partial summary judgment on April 1, 2010. (Doc. 139.) On May 21st, 2010, the Court ordered Plaintiff to file a revised response because Plaintiff failed to follow Federal and Local Rules of Civil Procedure by referencing documents not in the official record, submitting an incomplete statement of facts, and violating Local Rule 56.1(b). (Doc. 143.)

## BACKGROUND[2]

During the relevant time period, Plaintiff worked in web design and development at MCDOT under the supervision of Roger Ball ("Ball"). (Doc. 138, Def.'s Statement of Facts ("DSOF") ¶¶ 1-2.) At that time, Ball was MCDOT's Community Relations Branch Manager and Public Information Officer. (DSOF ¶ 3.) When Ball learned that Plaintiff had made allegations of discrimination about a previous supervisor, he began documenting his interactions with her. (Doc. 145, Pl.'s Statement of Facts ("PSOF") ¶ 1; Doc. 145, Ex. 1, Ball Dep., 102:2-11.) Additionally, Ball consulted with human resources, other superiors, and the county attorney about Plaintiff. (PSOF ¶ 2.)

On Plaintiff's November 12, 2002, performance evaluation, Ball gave Plaintiff a Rating of "G" which represented "Good Solid Performance - Fully met expectations in all prioritized areas of performance plan." (Doc. 145, Ex. 5.) Then on June 24, 2003, Plaintiff attended a "Tom's Town Hall" meeting ("TTH") led by then director of MCDOT, Tom Buick, where a variety of transportation issues were discussed. (PSOF ¶ 4.) During the meeting, Plaintiff voiced criticisms of MCDOT's OATTN program. (Id.) Ball had Plaintiff's statements partially transcribed. (Id.; Doc. 145, Ex. 6.) After her remarks at the TTH meeting, Plaintiff was counseled by Ball that she had failed to show proper deference to MCDOT officials in her comments and that she had inaccurately purported to speak for others. (PSOF ¶ 5.) Plaintiff's July 20, 2003 performance evaluation, which came almost immediately after the TTH meeting, was significantly lower than her 2002 review. (Id. at ¶ 6; Doc. 138, Ex. 3.) Plaintiff received a rating of "P" which represented "Partially Meets Performance Expectations - Did not fully meet expectations. Needs to improve by next rating period." (Doc. 138, Ex 3.)

On June 29, 2004, Plaintiff was given two written warnings by Ball. (PSOF ¶ 7; Doc. 138, Exs. 4, 6; Doc. 145, Ex. 1, Dep. Exs. 47, 48.) Both warnings were prepared by Human Resources, and then reviewed and signed by Ball. (Id.) By this time, Ball had already asked

---

[2]These facts are undisputed unless otherwise noted.

Human Resources to have Plaintiff expeditiously terminated. (PSOF ¶ 7, Doc. 145, Ex. 1, Ball Dep., 162:14-16; Dep. Ex. 42.) Michael Sabatini ("Sabatini") was Ball's immediate supervisor. (Doc. 138, Ex. 1, Ball Dep., 166:8-11.) Although Plaintiff had followed Sabatini's advice to secure approval of work from other departments, Ball and Sabatini cited Plaintiff's solicitation of work from other departments as a reason for her termination (PSOF ¶ 8; Doc. 145, Ex. 8.)

During the relevant period, the director of MCDOT had authority to set policy for dealing with personnel matters. (Doc 145, Ex. 9, Def.'s Answer to Req. for Admis., 13-14.) Since February 16, 2004, Michael Ellegood ("Ellegood") has been the director of MCDOT. (PSOF ¶ 12; Doc. 145, Ex. 10, Def's Answer to Interrog., Interrog. No. 8.) Ellegood conferred with Sabatini before the decision to terminate Plaintiff was finalized. (PSOF ¶ 15; Doc. 145, Ex. 1, Ball Dep., 187:20-188:7.) Ellegood expressed to Ball that he did not think very highly of Plaintiff because of "the things that she was saying and doing." (Doc. 145, Ex. 1, Ball Dep., 166:24-167:4; PSOF ¶ 16.) Additionally, Ellegood spoke with Plaintiff twice before her termination, telling her that she was "in trouble" and that she should "find a new job." (PSOF ¶ 17; Doc. 145, Ex. 12, Pl.'s Answer to Interrog. No. 8.) In one of these meetings, Plaintiff claims she informed Ellegood about the abuse she received from Ball after her complaints about safety and waste issues. (PSOF ¶ 18; Doc. 145, Ex. 4, Spina Dep., 182:5-185:22.)

Ellegood was the person with the final authority to terminate Plaintiff.[3] (Doc 145, Ex. 9, Def.'s Answer to Req. for Admis., 13-14.) When Ellegood ultimately decided to terminate Plaintiff, he relied on Ball's recommendation, as well as advice from the County Attorney and Human Resources. (PSOF ¶ 14; Doc. 145, Ex. 3, Ellegood Dep., 58:8-14.) Ellegood claimed he ultimately fired Plaintiff because "she missed deadlines, . . . her work was sloppy . . . [and] she did not follow direction." (DSOF ¶ 1; Doc. 138, Ex. 2, Ellegood Dep., 39:11-15.) Ellegood

---

[3]In Plaintiff's Statement of Facts in Support of her Revised Response, Plaintiff erroneously cites to "Exhibit 3 (Deposition of Michael Ellegood page 63 line 22 - page 64 line 13)." (PSOF ¶ 13.) The pages to which Plaintiff cites were not included in Exhibit 3. This Court would caution counsel for Plaintiff in continuing to cite to evidence that is not included in the official record.

also claimed that Plaintiff had a long history of "inadequate work, insubordination, being disruptive with other people . . ., [and of] receiv[ing] written warnings." (Doc. 138, Ex. 2, Ellegood Dep., 61:18-24.) For example, MCDOT points out that Plaintiff referred to her MCDOT managers as "assholes" (DSOF ¶ 5; Doc. 138, Exs. 4-5) and Ball as "Roger No Balls" and "a dick" (DSOF ¶ 6-7; Doc. 138), Exs. 4, 6), and failed to complete required classes (Doc. 138, Ex. 6).

## PROCEDURAL BACKGROUND

On March 7, 2005, Plaintiff brought this action against MCDOT and Co-Defendant Ball (Doc. 1.) Ball was later dismissed from the suit. (Doc. 8.) Plaintiff subsequently filed a Second Amended Complaint on October 6, 2006, alleging five claims: Count one alleges sex discrimination in violation of 42 U.S.C. § 2000e (2d. Am. Compl. ¶¶ 21-24), count two alleges hostile work environment in violation of 42 U.S.C. § 2000e (Id. at ¶¶ 25-29), count three alleges retaliation in violation 42 U.S.C § 2000e (Id. at ¶¶ 30-34), count four alleges a breach of 42 U.S.C. § 1983 (Id. at ¶¶ 35-39), and count five alleges intentional infliction of emotional distress (Id. at ¶¶ 40-44). On June 19, 2009, MCDOT filed a motion for summary judgment on all of Plaintiff's claims. (Doc. 126.) On February 5, 2010, the Court granted MCDOT's motion as to the claims of sex discrimination, hostile work environment, and intentional infliction of emotional distress. (Doc. 136.) The court denied the motion as to claims of breach of § 1983 and retaliation. (Id.) Finally, the Court allowed the parties to resubmit motions regarding the § 1983 claim because the issue had not been adequately briefed. (Id.) On March 5, 2010, MCDOT moved for partial summary judgment regarding the § 1983 claim. (Doc. 137.)

## STANDARD OF REVIEW

Upon motion at any time, a party defending against a claim may move for "partial summary judgment," that is, "summary judgment on . . . part of the claim." Fed. R. Civ. P. 56(b). A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c)(2); see Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. The movant on a summary judgment motion bears the initial burden of providing a legal basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. at 323. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp.v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. If the moving party meets its burden, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

All inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party, Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992), but inferences must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party. Celotex, 477 U.S. at 322. Moreover, inferences cannot be created by pointing to "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). Rather, deference to the nonmoving party has limits: (i) a plaintiff cannot rest on allegations in his pleadings to overcome a motion for

summary judgment (Brinson, 53 F.3d at 1049); and (ii) self-serving affidavits do not establish a genuine issue of material fact if they fail to state facts based on personal knowledge or are too conclusory (Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001)).

## DISCUSSION

Plaintiff asserts that Ball terminated her employment at MCDOT in retaliation for statements that she made at the June 24, 2003 TTH meeting, and that this violated her First Amendment right to free speech. (2d Am. Compl. ¶¶ 36, 38.) Plaintiff further asserts that Ellegood, as the final policymaker for the alleged violation at issue, ratified the decision by Ball to terminate her. (Doc. 144, Pl.'s Rev. Resp. to Def., 4:6-15.) Therefore, Plaintiff claims MCDOT has, under color of state law, intentionally caused Plaintiff to be deprived of her freedom of speech and expression, violating 42 U.S.C. § 1983. (2d Am. Compl. ¶ 38.) MCDOT seeks summary judgment on Plaintiff's § 1983 claim, asserting that Plaintiff's termination was carried out in a lawful manner. (Doc. 146, Def.'s Reply in Supp., 5:22-6:5.) MCDOT further asserts that even if Ball unlawfully retaliated against Plaintiff, MCDOT cannot be held liable because there is no evidence that Ellegood, as the final policymaker, ratified Ball's conduct. (Id. at 4:19-5:20.)

42 U.S.C. § 1983 states that any person who "under color of any statute, ordinance, regulation, custom, or usage . . . depriv[es] [a citizen] of any rights, privileges, or immunities secured by the Constitution and laws" is subject to civil liability. In Monell v. Department of Social Services of New York, the Supreme Court held that persons subject to suit under § 1983 include municipalities and other local governing bodies. 436 U.S. 658, 690 (1978). Municipal liability, however, cannot be founded on a theory of *respondeat superior*. Id. at 691. A municipality will not be held liable for the unconstitutional discretionary actions of its employees. St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988). A municipality's liability under Monell may be premised on any one of three distinct theories: (1) a municipal employee was acting pursuant to an expressly adopted official policy; (2) a municipal employee was acting pursuant to a longstanding custom or practice; or (3) a municipal employee was acting as a final

policymaker. Webb v. Sloan, 330 F.3d 1158, 1164 (9th Cir. 2003). The act of a final policymaker includes the ratification of an alleged unconstitutional action by a subordinate. Praprotnik, 485 U.S. at 127; see also Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004).

**A.     Liability Through Official Policy or Custom.**

For this issue, the court instructed the parties to point to specific evidence for each of the three theories of municipal liability. (Doc. 136, 28:14-21.) The first two theories of liability require evidence that the municipal employee was acting pursuant to an expressly adopted official policy, or a longstanding custom or practice. Webb, 330 F.3d at 1164. However, Plaintiff has not provided any argument or evidence showing that MCDOT had an unconstitutional official policy or longstanding custom during the period of the alleged adverse employment actions. Accordingly, there is no basis for finding that MCDOT has municipal liability under the first two theories.

**B.     Liability Through an Official Policymaker**

Only municipal officers who have "final policymaking authority" may by their actions subject a municipality to § 1983 liability. Praprotnik, 485 U.S. at 123 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)). The acts of an official policymaker are presumed to be the acts of the municipality itself (Id. at 123), thereby circumventing the rule in Monell that the actions of the employees cannot lead to municipal liability. 436 U.S. at 690-91. Even one unconstitutional action by an official policymaker can give rise to municipal liability. L.A. Protective League v. Gates, 907 F.2d 879, 889 (9th Cir. 1990). Furthermore, policymakers should not be able to "insulate the government from liability simply by delegating their policymaking authority to others," therefore a final policymaker's ratification of the unconstitutional actions of a subordinate leads to municipal liability. Praprotnik, 485 U.S. at 126.

///

1. Court Determination of the Final Policymaker

Final policymaking authority is determined by state law, and "should be decided by the trial judge before the case goes to the jury." Gates, 907 F.2d at 889. A final policymaker "speak[s] with final policymaking authority" for the municipality concerning the allegedly unconstitutional action at issue. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989). An official may have been delegated final policymaking authority where "the official's discretionary decision is [not] 'constrained by policies not of that official's making' and … [not] 'subject to review by the municipality's authorized policymakers.'" Ulrich v. City and County of S.F., 308 F.3d 968, 986 (9th Cir.2002)(quoting Christie v. Iopa, 176 F.3d 1231, 1236-37 (9th Cir.1999)). To be a final policymaker, he or she must be in a position of authority such that "a final decision by that person may appropriately be attributed to the [defendant public body]." Lytle, 382 F.3d at 983.

Plaintiff alleges that she was ultimately terminated for the positions she voiced at the TTH. (2d Am. Compl. ¶¶ 36, 38.) Therefore, the alleged unconstitutional policy at hand is termination for voicing disfavored opinion. The final policymaker is the official within Maricopa County who had the final authority to make decisions affecting personnel matters for MCDOT in this regard. Arizona state law allows for countries to adopt "employee merit system[s]" for all county appointive officers. A.R.S. § 11-352(A). Under the Merit System Rules of Maricopa County, an employee cannot be terminated without the approval of an appointed authority. (Doc. 137, App. A, § 15.) Ellegood, as the appointed authority, was responsible for approving Plaintiff's termination. Furthermore, MCDOT has admitted that the Director of MCDOT, Ellegood, had the authority to "make final policy decisions with respect to personnel matters affecting employees of [MCDOT]." (Doc. 145, Ex. 9, Def.'s Answer to Pl.'s Req. for Admis. No. 14; Ex. 10, Def's Answer to Interrog., Interrog. No. 8.) Finally, Plaintiff was an "unclassified" employee. (Doc. 138, Ex. 8, Termination Letter, P. 4.) An unclassified employee does not have the right to appeal the decision of an appointed authority,

unlike a regular employee. (Doc. 137, App. A., §§ 4, 5, 6, 7, 15, 16.) A final decision by Ellegood can be fairly attributed to MCDOT itself, since his decisions regarding the employment of unclassified employees are final. (Id.; Doc. 138, Ex. 8, Termination Letter, P. 4.) Therefore, the Court finds that Ellegood is the final policymaker for the constitutional violation at issue.

    2.    Ratification by a Final Policymaker

To overcome summary judgment, Plaintiff must provide factual support for her contention that a final policymaker at MCDOT ratified the unconstitutional action of a subordinate. See Praprotnik, 485 U.S. at 127 (the ratification of an action of a subordinate by a final policymaker leads to municipal liability because " [the authorized policymaker's] decision is final"). Ratification requires that the final policymaker has knowledge of a subordinate's unconstitutional action. Christie, 176 F.3d at 1239. Furthermore, there must be specific evidence that the final policymaker approved of the action and the basis for it. Id.; see also Lytle, 382 F.3d at 987 ("[t]he policymaker must have knowledge of the constitutional violation and actually approve of it"). The evidence must specifically show that the policymaker made a "conscious, affirmative choice" to ratify the conduct in question. Gillette v. Del more, 979 F.2d 1342, 1347 (9th Cir. 1992). A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 ratification claim. Christie, 176 F.3d at 1239 (citing Weisbuch v. County of Los Angeles, 119 F.3d 778, 781 (9th Cir. 1997)).

Ordinarily, ratification is a question for the jury. Christie, 176 F.3d at 1238-39. However, as with all jury questions, Plaintiff must first establish that there is a genuine issue of material fact regarding whether a ratification occurred. Id. at 1239. At the relevant time, Ellegood was the final policymaker at MCDOT regarding personnel matters and was responsible for approving Plaintiff's termination. (Doc 145, Ex. 9, Def.'s Answer to Req. for Admis., 13-14; Doc. 145, Ex. 10, Def's Answer to Interrog., Interrog. No. 8.) To survive

summary judgment, Plaintiff must show both Ellegood's knowledge of Ball's alleged retaliation against Plaintiff, and specific evidence that Ellegood approved of the retaliation.

To show ratification, Plaintiff must provide evidence that Ellegood had knowledge of the alleged unconstitutional nature of Plaintiff's termination. Plaintiff claims that Ellegood was fully aware of Plaintiff's "activities" and that he did not care for her because of the things she was saying and doing. (Doc. 144, Pl.'s Rev. Resp., 4:8-10.) Further, Plaintiff states that she directly informed Ellegood that she was being abused by Ball and others during a performance meeting. (Doc. 145, Ex. 4, Spina Dep., 184:25-185:8.) Specifically, Plaintiff claims she told Ellegood "this is ridiculous . . . they're abusing me." (Id. at 185:4-5.) Plaintiff explains that the abuse she received was from Ball, who was allegedly retaliating against her at the direction of then Director of MCDOT, Tom Buick. (Id. at 184:13-18.)

The context of the testimony Plaintiff refers to is unclear. While Plaintiff points to the fact that in Ball's deposition, Ball stated that Ellegood "did not think very highly of [Plaintiff] because of some of the things she was saying and doing," (Doc 145, Ex. 1, Ball Dep.,166:24-167:4), it is not apparent why Ellegood felt that way. When asked for an instance of Plaintiff's behavior of which Ellegood disapproved, Ball claimed that "[Ellegood] thought [Spina] was making up things that she was saying." (Id. at 167:5-7.) The "things" are not articulated, therefore this testimony is of little probative value. The parties do not dispute that Ellegood had met with Sabatini, Ball and others about Plaintiff's termination. (PSOF ¶¶ 15-17; DSSOF ¶ 17.) However, the content of these conversations is also unclear. MCDOT maintains that the issues involving Plaintiff had to do with her behavioral problems, not with her opinions. (DSOF ¶¶ 1, 4, 11, 12, 13.)

Plaintiff asserts that "she made [Ellegood] aware of her feeling that she was being harassed because of her having spoken out about safety and waste issues." (Doc. 144, Pl.'s Rev. Resp., 4:10-11.) This assertion is unsupported by Plaintiff's testimony. While Plaintiff testifies that she informed Ellegood she was "being abused," she does not claim that she informed

- 10 -

1  Ellegood of the alleged retaliatory nature of that abuse. (Doc. 145, Ex. 4, Spina Dep., 184:25-
185:8.) Ultimately, there is no evidence on the record that points to Ellegood discussing or
being informed of the alleged retaliatory motives for Plaintiff's termination. Plaintiff may not
rely on mere allegations to survive summary judgment. Fed. R. Civ. P. 56(e). Statements that
Ellegood was informed of the alleged retaliatory nature of Plaintiff's termination during these
meetings fails to rise above the level of conjecture.

Even if Plaintiff provided evidence that Ellegood had knowledge of the unconstitutional nature of Plaintiff's termination, to show ratification, Plaintiff must also provide *specific evidence* that Ellegood approved of the decision and the basis for it. Christie, 176 F.3d at 1239. However, Plaintiff fails to allege that Ellegood approved of the basis for Ball's recommendation that she be fired.[4] At most, Plaintiff insinuates[5] that during the conversations Ellegood participated in with Ball and Plaintiff, Ellegood may have been informed of the retaliatory nature of Plaintiff's termination. (Doc. 144, Pl.'s Rev. Resp., 4:11-15.) Since Ellegood relied on Ball's recommendation when he made the decision to terminate Plaintiff, Plaintiff implies that Ellegood may have approved of the basis for Ball's alleged unconstitutional action. (Id. at 4:8-15.) To show ratification, however, there must be *specific* evidence that Ellegood made a *conscious, affirmative choice* to ratify Ball's decision. Plaintiff's claims and innuendo fail

---

[4]In Plaintiff's Revised Response (Doc. 144), counsel omits the necessary citations to the record, in violation of Local Rule 56.1(e). Plaintiff also improperly briefs the legal argument, failing to follow the directive of the Court to carefully explain each element of a § 1983 claim, and how they apply to the facts. (Doc. 136, 28:14-21.) The Court specifically instructed the parties that "[b]road, conclusory allegations are not sufficient." (Id.) While Plaintiff properly cites a case involving ratification, (Doc. 144, Pl.'s Rev. Resp., 3-4), Plaintiff fails to sufficiently brief the elements of ratification and how they apply the facts in the case at bar. Instead, Plaintiff relies on broad, conclusory allegations. This Court would caution Counsel for Plaintiff from continuing to ignore the local rules and the specific instructions of the Court.

[5]"A jury should be allowed to determine . . . whether Ellegood's ratification of Ball's and Sabitini's decision to terminate [Plaintiff] was tainted by feelings of retaliation for [her criticism of MCDOT programs]." (Doc. 144, Pl.'s Rev. Resp., 4:11-15.)

- 11 -

1 to point to specific evidence in the record that would show conscious approval from Ellegood. Conclusory allegations that Ellegood may have been "tainted by retaliatory feelings" during these encounters is insufficient to support a finding of ratification.

Considering the facts in the light most favorable to Plaintiff, nothing in the evidence Plaintiff provides would lead to municipal liability. Even if Ball was motivated by feelings of retaliation, and Ellegood was aware of those feelings, there is no specific evidence that Ellegood approved of the basis for Ball's decision. This Court was unable to find anything in an exhaustive search of the depositions of Plaintiff, Ball, Sabatini, or Ellegood which suggests otherwise. The performance evaluations, written warnings, and other documentation all refer to Plaintiff having specific behavior and performance problems. Ellegood stated that Plaintiff was fired because she had a long history of "inadequate work, insubordination" and "being disruptive." (DSOF ¶ 12.) This history is extensively documented through numerous performance evaluations (Doc. 138, Ex. 3; Doc. 145, Ex. 5), written warnings (Doc. 138, Exs. 4, 6), and the testimony of the involved parties (Doc. 145, Exs. 1-4.) In contrast, Plaintiff's allegation that Ellegood may have been tainted by feelings of retaliation is not supported by any specific facts in the record and is therefore speculative. Plaintiff cannot survive summary judgment by merely casting "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The record shows no evidence that Ellegood had knowledge of the alleged retaliatory motive for Plaintiff's termination, or that Ellegood made a conscious, affirmative choice to ratify Ball's conduct; therefore there is no genuine issue of material fact and summary judgment is appropriate.

**CONCLUSION**

Plaintiff has failed to provide factual support that MCDOT has an unconstitutional policy or custom. Furthermore, Plaintiff's conclusory claim that Ellegood, as the final policymaker, ratified the adverse employment actions against her is not supported by the evidence in the record. Ellegood must have approved of the basis for Ball's actions against Plaintiff in order

to ascribe liability to the municipality. Even when viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that Ellegood ratified the actions of Ball. Plaintiff has failed to support her § 1983 claim against MCDOT beyond mere allegations.

Accordingly,

**IT IS HEREBY ORDERED GRANTING** MCDOT's Motion for Partial Summary Judgment (Doc. 137). A Final Pre-Trial Conference will be set by separate order.

DATED this 1st day of July, 2010.

_____
Stephen M. McNamee
United States District Judge